[No. 25580-1-I.  Division One.  December 20, 1991.]

TERRY E. FOX, ET AL, *Appellants*, v. SUNMASTER PRODUCTS, INC., ET AL, *Respondents*.

*Lee Pelzel, Donald K. Davis,* and *The Davis Firm; Mary Ruth Mann* and *Law Offices of Mary Ruth Mann,* for appellants.

*Barry N. Mesher* and *Lane Powell Spears Lubersky; Steven G. Wraith* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondents.

GROSSE, C.J. — Terry E. and Billie May Fox (the Foxes) appeal two orders on summary judgment dismissing their suit against Sunmaster Products, Inc. (Sunmaster), and Ladder Industries, Inc. (Ladder).[1] Terry Fox suffered serious

---

[1] The case returns to this court on a mandate from the Washington State Supreme Court to determine each appeal on its merits following its decision that Fox could wait to appeal the superior court decisions until the last of all the multiple claims was decided below. *Fox v. Sunmaster Prods., Inc.,* 115 Wn.2d 498, 798 P.2d 808 (1990).

injuries as a result of a slip on a stepladder on or about November 20, 1984. The Foxes sought damages from the manufacturer of the ladder, Sunmaster, and later from Ladder, the company which purchased Sunmaster. Sunmaster and Ladder are both California corporations.

In 1986, Ladder purchased Sunmaster for $320,000.[2] No shares of stock were transferred. The purchase included the assets of Sunmaster with the exception of cash on hand and accounts receivable. The agreement specifically provided that Ladder did not assume any of Sunmaster's liabilities. Ladder ceased production of Sunmaster's line of ladders once the ladders then in the process of production were completed. Ladder continued the Sunmaster line of hand trucks under its own name. The Foxes filed an amended complaint in May 1987 naming Ladder as an additional defendant. Ladder was served in June 1987.

In October of 1986, the 90th day after the filing of the original summons and complaint, a process server in California contacted an attorney for Sunmaster at his office in San Francisco. The process server asked for the location of Sunmaster and Horace Jordan, its president and registered agent. The attorney told the process server that Mr. and Mrs. Jordan were out of town, but the process server could call the following week to set up an appointment with Mr. Jordan. The process server was also told that Sunmaster was no longer in business. The process server requested authority to serve Anita Jordan, the Jordans' daughter who was working at Ladder's office. Ladder's location was the same as the former Sunmaster. The attorney responded that the only persons who could be properly served were Mr. or Mrs. Jordan, or possibly the office of the Secretary of State of California pursuant to California code provisions. He indicated that Anita Jordan was not authorized to accept service for Sunmaster. Nevertheless, at the

---

[2]In February of 1986, Sunmaster filed its certificate of winding up and dissolution with the Secretary of State of California. In March of 1986 Ladder agreed to purchase most assets of Sunmaster. At that time, Sunmaster was wholly owned by Horace and Marjory Jordan. At the time the action was filed, Sunmaster had not fully dissolved and remained a viable, insured entity.

instruction of a process server in Washington state, the California process server went ahead and left the summons and complaint with Anita Jordan at the office of Ladder. She refused to sign for or accept service. Anita Jordan was employed by her parents at Sunmaster until the close of the sale of the company. She accepted employment as a receptionist for Ladder beginning April 7, 1986. At the time she was fully emancipated from her parents.

The Foxes appeal each order on summary judgment, one dismissing Ladder and the second dismissing Sunmaster from the action.[3] For the reasons given below, we affirm the decision on each summary judgment.

SUNMASTER PRODUCTS, INC.

Sufficiency of the Service of Process

The Foxes claim they complied with the statute and rules governing the service of process on a foreign corporation in a manner sufficient to confer jurisdiction. The Foxes claim the statute, RCW 4.28.080(10), provides that service of process on any agent or secretary of a foreign corporation is sufficient.[4] Further, they claim Washington has adopted a type of "substantial compliance" test to determine suffi-

---

[3]The basis for dismissal differed as to each defendant. Sunmaster's dismissal was based on the finding that service of process was insufficient and therefore the trial court lacked jurisdiction. The order dismissing Ladder was based on the trial court's finding that Ladder was not a successor to Sunmaster and therefore not liable as a successor.

[4]The sections of former RCW 4.28.080 relevant to the discussion here are as follows:

"(9) If the suit be against a company or corporation other than those designated in the preceding subdivisions of this section, to the president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the company or corporation, registered agent, secretary, cashier or managing agent.

"(10) *If the suit be against a foreign corporation or nonresident joint stock company, partnership or association doing business within this state, to any agent, cashier or secretary thereof.*

" . . . .

"(14) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his usual abode with some person of suitable age and discretion then resident therein." (Italics ours.)

ciency of delivery of process, citing *Reiner v. Pittsburg Des Moines Corp.*, 101 Wn.2d 475, 680 P.2d 55 (1984).[5] In *Reiner*, the Supreme Court upheld service on a foreign corporation where the process server determined that the house where he was delivering process was the usual abode of the registered agent and left process with the agent's spouse. Here, the Foxes contend service on Anita Jordan, the daughter of the owners of Sunmaster and onetime office person at Sunmaster, was valid and in substantial compliance with the statute.

■ The test for proper service is set forth in *Crose v. Volkswagenwerk Aktiengesellschaft*, 88 Wn.2d 50, 558 P.2d 764 (1977):

> Service of process on an agent of a foreign corporation doing business within the state must be on an agent representing the corporation with respect to such business. It must be made on an authorized agent of the corporation who is truly and thoroughly a representative of it, *rather than a mere servant or employee*, or a person whose authority and duties are limited to a particular transaction. The agent must be an agent in fact, not merely by construction of law, and must be one having in fact *representative capacity and derivative authority.* However, it is not necessary that express authority to receive or accept service of process shall have been conferred by the corporation on the person served. It is sufficient if authority to receive service may be reasonably and justly implied.
>
> *The question turns on the character of the agent, and, in the absence of express authority given by the corporation, on a review of the surrounding facts and the inferences which may properly be drawn therefrom.*

*Crose*, at 58 (quoting 20 C.J.S. *Corporations* § 1942(b) (1940)). *See also Reiner*, 101 Wn.2d at 477; *Kennedy v. Sundown Speed Marine, Inc.*, 97 Wn.2d 544, 545-46, 647 P.2d 30, *cert. denied*, 459 U.S. 1037 (1982); *Lockhart v. Burlington N.R.R.*, 50 Wn. App. 809, 812-13, 750 P.2d 1299, *review denied*, 111 Wn.2d 1022 (1988).

---

[5]The *Reiner* case has been criticized at least twice since its publication. *See Nitardy v. Snohomish Cy.*, 105 Wn.2d 133, 135, 712 P.2d 296 (1986) (sections of RCW 4.28.080 are clear and explicit in requirements of service and call into question the *Reiner* case); *Spokane Cy. v. Utilities & Transp. Comm'n*, 47 Wn. App. 827, 831-32, 737 P.2d 1022 (1987) (citing *Nitardy* as questioning *Reiner*).

■ To apply the *Reiner* holding in favor of the Foxes requires a determination that Anita Jordan was an agent of Sunmaster. Whether a person is an "agent" of a foreign corporation for the purposes of accepting service of process under RCW 4.28.080(10) is determined from a review of all the surrounding facts and proper inferences therefrom. The statute should be liberally construed, but "agent" status will not be confirmed on an employee whose duties are purely mechanical and who has neither express nor implied authority to represent the corporation. *Faucher v. Burlington Northern, Inc.*, 24 Wn. App. 711, 603 P.2d 844 (1979), *review denied*, 93 Wn.2d 1013 (1980).

Here, Anita Jordan was an employee of Ladder at the time the process server attempted to serve Sunmaster. She was the emancipated daughter of the owners and registered agents of Sunmaster and did not own any interest in Sunmaster at the time of the attempted service. Additionally, the attempted service was not at the usual abode of the registered agents.[6]

Sufficient service of process on Sunmaster was not accomplished by leaving a copy with Anita Jordan, as she was not an agent of Sunmaster. Additionally, there was no successful attempt at alternative service of process.[7] Therefore, the trial court was correct in determining there was no

---

[6]We also distinguish the facts in the case before us from those in *Wichert v. Cardwell*, 117 Wn.2d 148, 812 P.2d 858 (1991), cited by the Foxes, a case concerning substitute service under RCW 4.28.080(14). The Supreme Court in *Wichert* upheld service on a nonresident adult child who at the time of the attempted service of process was the sole occupant of the defendant's usual abode. In the case here, process was not served at the usual abode.

[7]The Foxes argue there was an attempt to serve the office of the Secretary of State of California. However, there was no evidence in the record before the trial court of any attempt at service on the Secretary of State of California. In the Foxes' supplemental reply brief filed with this court there is a letter from the office of the Secretary of State of California rejecting any attempted service of process. This letter states that service was refused because there is no statutory authority for the acceptance of process by the California Secretary of State regarding action in a court outside of California. It cannot be said this attempted service somehow accomplishes service of process under the Washington statute.

service of process on Sunmaster and that the court lacked proper jurisdiction.

The Effect of *Sidis v. Brodie/Dohrmann, Inc.*

After oral argument in this case, the Washington State Supreme Court decided the case of *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991), holding that under RCW 4.16.170 service of process on one of multiple defendants within 90 days of the filing of the complaint tolls the statute of limitation as to the remaining unserved defendants. *Sidis*, 117 Wn.2d at 329.

The Foxes contend that even if the lower court's determination of insufficient service on Sunmaster is upheld, application of the holding in the *Sidis* case would toll the statute of limitations because Ladder was timely served before the limitation statute expired. This is only true if proper service on Sunmaster was accomplished before an appropriate dismissal of Ladder. The *Sidis* court, in discrediting the possibility of a plaintiff extending the statute of limitation indefinitely against multiple defendants by merely serving one of them, stated:

> Plaintiffs must proceed with their cases in a timely manner as required by court rules, and must serve each defendant in order to proceed with the action against that defendant. A plaintiff who fails to serve each defendant risks losing the right to proceed against unserved defendants if the served defendant is dismissed, as occurred in *Fittro v. Alcombrack*, 23 Wn. App. 178, 180, 596 P.2d 665, *review denied*, 92 Wn.2d 1029 (1979)[.]

*Sidis*, 117 Wn.2d at 329-30. Therefore, if Ladder's dismissal is reversed, the Foxes' allegation would be correct and they would be able to proceed against both Sunmaster and Ladder. However, if the trial court's dismissal of Ladder is upheld, the Foxes lose the right to proceed against Sunmaster because they failed to properly serve Sunmaster until after Ladder had been dismissed and the limitation statute expired before Sunmaster was "re-served".[8] *See*

---

[8]The facts in *Sidis* are different from those before us. In *Sidis*, the plaintiff filed one complaint which named three defendants and served one of the named

*Sidis*, 117 Wn.2d at 330. As explained below, we affirm the dismissal as to Ladder Industries, and thus affirm the dismissal as to Sunmaster as well.

### LADDER INDUSTRIES

The Foxes contend Ladder is a successor corporation of Sunmaster and therefore liable for damages.

■ If a corporation purchases the assets of another corporation, the successor corporation can be held liable for products manufactured prior to the sale if either (1) the purchase is a de facto merger or consolidation, or (2) the purchaser is a mere continuation of the seller. *George v. Parke-Davis*, 107 Wn.2d 584, 590, 733 P.2d 507 (1987). However, a corporation merely purchasing the assets of another corporation is not liable for the unbargained-for debts and liabilities of the selling corporation. *George*, 107 Wn.2d at 588.

There are four well-established exceptions to this doctrine, and a fifth exception has specifically been developed for product liability actions. *See Martin v. Abbott Labs.*, 102 Wn.2d 581, 613, 689 P.2d 368 (1984). The Foxes argue that Ladder is a successor to Sunmaster under three of these exceptions. They claim: (1) the purchase of Sunmaster by Ladder was a de facto merger, (2) the purchaser is a mere continuation of the seller, and (3) Ladder continued the output of the previous corporation's line of products.[9]

---

defendants within the 90-day tolling period. *See* RCW 4.16.170. The one served defendant then filed a third party complaint against the other two defendants within the 3-year limitation period after the injury. The plaintiff did not serve the remaining two defendants during the limitation period. Unlike the facts before us, in *Sidis* there was no issue with regard to the served defendant being dismissed prior to the second service. Here, the Foxes ineffectively served Sunmaster in October of 1986. In May 1987, the Foxes filed an amended complaint naming Ladder and served it on June 10, 1987. Ladder was dismissed on summary judgment 18 months later. One year after that dismissal, Sunmaster was dismissed. Following these dismissals, on January 16, 1990, after the statute of limitations for the personal injury had expired, the Foxes served Sunmaster with the amended complaint.

[9]This product line exception was created by *Ray v. Alad Corp.*, 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574 (1977).

■ The facts do not support the de facto merger claim. Generally, a de facto merger is found where a seller corporation continues its business existence as an absorbed part of the buyer and the seller's shareholders or officers continue their interest in the business after the dissolution of the selling corporate entity. Usually the seller's shareholders acquire shares in the purchaser corporation in exchange for their stock, rather than selling for cash. The rationale behind imposing liability on the purchaser when shares rather than cash is given for the purchase is that the seller's stockholders retain an ownership interest in the continued business operations. *See Cashar v. Redford*, 28 Wn. App. 394, 398, 624 P.2d 194 (1981); *Armour-Dial, Inc. v. Alkar Eng'g Corp.*, 469 F. Supp. 1193 (E.D. Wis. 1979). This did not happen in the case before us as this was a cash sale.

■ Next, the mere continuation exception does not apply in this case because there is no common identity of directors, management, and shareholders. This is the "corporate entity" theory as set forth in *Cashar*, 28 Wn. App. at 397. There is no dispute that Ladder is completely separate from Sunmaster. Ladder is an independent corporation under separate control, management, and ownership. Further, while some courts have looked to the adequacy of consideration paid for the purchased corporation, here there is no evidence suggesting Ladder did not pay an adequate price for Sunmaster and its assets. *See Cashar*, 28 Wn. App. at 397-98.

■ Finally, the Foxes contend the judicially created "product line" exception applies to this transaction. Under this exception Ladder as a successor corporation may be liable for preacquisition injuries resulting from defective products manufactured by its predecessor if: (1) Ladder acquired all Sunmaster's assets, leaving no more than a mere corporate shell, and (2) Ladder holds itself out to the general public as a continuation of Sunmaster by producing the same product line under a similar name, and (3) Ladder

benefits from the goodwill of Sunmaster. *See Martin v. Abbott Labs.*, 102 Wn.2d at 614 (citing *Ray v. Alad Corp.*, 19 Cal. 3d 22, 25, 560 P.2d 3, 136 Cal. Rptr. 574 (1977)).

This exception does not apply to the facts before us. First, in *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 264, 692 P.2d 787 (1984), the court pointed out that the exception does not apply unless the predecessor corporation is unavailable for suit. Here, Sunmaster still existed and was insured at the time the action was filed. Second, in *George v. Parke-Davis*, 107 Wn.2d at 588-90, the court held that application of the product line exception depends on whether the successor corporation continues to manufacture the specific type of product, not simply remaining in the same general type of business. Here, there is evidence indicating Ladder made ladders of its own design and only continued the hand truck design of Sunmaster. Finally, Ladder has not gained any significant benefit from the "Stepmaster" ladder. Although Ladder may have acquired some goodwill from its purchase of Sunmaster, to be held liable it must have benefited from the goodwill associated with the allegedly defective product. *George v. Parke-Davis*, 107 Wn.2d at 590. After acquiring Sunmaster's assets, Ladder ceased production and sale of the "Stepmaster" ladder. Any "goodwill" Ladder acquired was associated only with the hand trucks.

The decision of each trial court as to the summary judgments on review before this court is affirmed.

COLEMAN and PEKELIS, JJ., concur.

Review denied at 118 Wn.2d 1029 (1992).