# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CLIFTON A. LITTLE, II and FANNIE M. LITTLE, husband and wife, | No. 86318-5-I |
| Respondents, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| HARDIE-TYNES CO., INC., | |
| Appellant. | |
| AIR & LIQUID SYSTEMS CORPORATION, as successor-by-merger to BUFFALO PUMPS, INC.; A.W. CHESTERTON COMPANY; BW/IP, INC., f/k/a BORG-WARNER INDUSTRAIL PRODUCTS, successor-in-interest to BYRON JACKSON PUMPS; COPES-VULCAN, INC.; FOSTER WHEELER LLC; FRASER'S BOILER SERIVCE, INC.; GENERAL ELECTRIC COMPANY; IMO INDUSTRIES, INC., individually and as successor-in-interest to DE LAVAL TURBINE, INC.; ITT CORPORATION, as successor-in-interest to FOSTER VALVES; METROPOLITAN LIFE INSURANCE COMPANY; NORTH COAST ELECTRIC COMPANY; PFIZER, INC.; P-G INDUSTRIES, INC., as successor-in-interest to PRYOR GIGGEY CO., INC.; UNION CARBIDE CORPORATION; VELAN VALVE CORPORATION; VIACOMCBS, INC.; WARREN PUMPS, LLC, individually and as successor-in-interest to QUIMBY PUMP COMPANY; CARRIER CORPORATION; FLOWSERVE US | |

INC., solely as successor-in-interest to
EDWARD VALVES, INC.; TATE
ANDALE, LLC; THE WM. POWELL
COPANY; WEIR VALVE &
CONTROLS USA INC., individually
and as successor-in-interest to
ATWOOD & MORRILL CO., INC.; and
THE NASH ENGINEERING
COMPANY,

        Defendants.

BIRK, J. — Under the product line doctrine, a successor corporation may, in certain circumstances, be held liable for its predecessor's liability for product liability claims. In this appeal, we first affirm the superior court's ruling after a bench trial that a corporate acquisition that left the predecessor with assets, but only for the purpose of liquidation, rendered the predecessor a mere corporate shell. However, we further hold that where there is no evidence that the successor corporation continued a product line with the product defect for which the law imposes liability, specifically here, where there is no evidence that the successor manufactured or sold asbestos containing products, the evidence does not allow the conclusion that the successor continued the same product line. As a result, we must reverse the superior court's judgment for plaintiffs, and remand for entry of judgment in favor of the defendant.

I

Clifton Little suffers from mesothelioma caused by exposure to asbestos. Little served in the United States Navy from 1970 to 1974, and he worked at the Puget Sound Naval Shipyard from 1974 to 1979. Dr. Carl Brodkin wrote that Little's "bystander occupational exposure" while serving in the Navy, and while working at

2

the Puget Sound Naval Shipyard, were causes of his mesothelioma. Brodkin identified forced draft blowers on the USS Kitty Hawk and USS Ranger, as well as "pumps" on the USS Constellation, as causes of Little's asbestos exposure. Navy records showed that forced draft blowers for the USS Kitty Hawk and USS Ranger and "boiler feed pumps" for the USS Constellation had been supplied to the Navy by Hardie-Tynes Manufacturing Company (Old H-T). The available evidence implied that those components were manufactured before 1960.

In 1997, Old H-T entered into an Asset Purchase Agreement (APA) to sell certain assets to HT Acquisition Inc., later re-named Hardie-Tynes Co., Inc. (New H-T). Old H-T retained certain other assets and obligations to New H-T, and the APA contemplated that after the sale Old H-T would merge into Hardie-Tynes LLC.

In July 2020, Little and his wife, Fannie Little, filed an action against New H-T and others seeking damages related to Little's mesothelioma diagnosis. New H-T did not answer. In 2021, the superior court entered findings and a default judgment against New H-T for $5,500,892.12, an amount determined after offsetting amounts Little had recovered from other defendants. In 2022, New H-T appeared and moved to set aside the default order and vacate the default judgment. The superior court granted New H-T's motion in part, vacating the default order as to liability but not as to causation or damages. The sole question left for determination was whether New H-T had successor liability for Old H-T's asbestos containing products under Washington's product line doctrine.[1]

---

[1] Little argued that New H-T was liable under a de facto merger theory, but this theory was rejected at summary judgment.

3

The parties both filed motions for summary judgment, both arguing they were entitled to summary judgment under the product line doctrine. The superior court granted summary judgment to the Littles on two of the three elements of the product line doctrine, the "same product line" and "goodwill" elements. The superior court denied New H-T's motion for summary judgment. The superior court held a one day bench trial to determine the final element, whether New H-T acquired substantially all of Old H-T's assets, leaving it a "mere corporate shell." The superior court decided in the Littles' favor, finding New H-T liable.

On appeal, New H-T challenges the trial evidence supporting the superior court's finding that it acquired substantially all of Old H-T's assets, leaving it a mere corporate shell, and the superior court's denial of its motion for summary judgment on the same product line element.

II

"The general rule in Washington is that a corporation purchasing the assets of another corporation does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation." Hall v. Armstrong Cork, Inc., 103 Wn.2d 258, 261-62, 692 P.2d 787 (1984). One exception to this general rule is the "product line doctrine." Leren v. Kaiser Gypsum Co., 9 Wn. App. 2d 55, 62, 442 P.3d 273 (2019). Under the product line doctrine, "successor liability arises where one corporation benefits from another's goodwill after acquiring its product line." Id. Application of the doctrine requires the court

> (1) to determine whether the transferee has acquired substantially all the transferor's assets, leaving no more than a mere corporate shell;
> (2) to determine whether the transferee is holding itself out to the

4

general public as a continuation of the transferor by producing the same product line under a similar name; and (3) to determine whether the transferee is benefitting from the goodwill of the transferor.

Martin v. Abbott Labs., 102 Wn.2d 581, 614, 689 P.2d 368 (1984).  This "narrowly drawn rule" applies to product liability claims and "strikes a fair balance among the competing considerations of products liability and corporate acquisitions."  Id. at 616.  Three justifications underlie the rationale for the product line doctrine:

First, the plaintiff would have no other recovery than that against the successor corporation.  Secondly, the successor corporation has a greater ability to spread the risk among future consumers of the same product.  Thirdly, the successor corporation benefits from the assumption of the old corporation's goodwill and therefore should shoulder the burdens associated with those products.

George v. Parke-Davis, 107 Wn.2d 584, 589-90, 733 P.2d 507 (1987).

A

The first element that must be shown under the product line doctrine is that "the transferee has acquired substantially all the transferor's assets, leaving no more than a mere corporate shell."  Hall, 103 Wn.2d at 262-63.  New H-T challenges findings of fact 11 through 15 and the conclusions of law that they support, that New H-T acquired substantially all of Old H-T's assets, leaving it a mere corporate shell.

On appeal from a bench trial, we review the superior court's findings of fact to determine if they are supported by substantial evidence, and whether they support the conclusions of law.  Columbia State Bank v. Invicta Law Grp. PLLC, 199 Wn. App. 306, 319, 402 P.3d 330 (2017).  Conclusions of law are reviewed de novo.  Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369

(2003). We view the evidence and draw all reasonable inferences in the light most favorable to the prevailing party. Columbia State Bank, 199 Wn. App. at 319. Unchallenged findings are accepted as true on appeal. Id.

Under the APA, New H-T paid $1 million for "all of the assets of [the s]eller (other than the [e]xcluded [a]ssets) which are used, usable or useful in the [b]usiness of every kind." The assets that New H-T acquired from Old H-T included real property, furnishings, furniture, equipment, machinery, parts, supplies, tools, outstanding orders, inventory, contracts, business records, technology, patents, trademarks, trade names, copyrights, and proprietary and confidential information. The excluded assets, and thus the assets that Old H-T retained, included cash, cash equivalents, accounts receivable, claims, income taxes, deferred charges, raw materials, automobiles, a vacant lot, and certain purchase orders.[2] The superior court, in an unchallenged finding of fact, determined that the assets that Old H-T retained were worth approximately $3.7 million. Pointing to the assets that Old H-T retained, New H-T argues that it did not acquire substantially all of Old H-T's assets leaving no more than a mere corporate shell.

However, substantial evidence supports the superior court's findings to the effect that the transaction was in substance a liquidation of Old H-T. Starting with challenged finding of fact 11, the superior court found that Old H-T merged into the limited liability company (LLC) "for the sole purpose of liquidating" Old H-T. Under the LLC's articles of organization, the first of its "purposes, objects and powers"

---

[2] The automobiles retained were "certain corporate cars for certain executives." The raw materials retained were worth $400,000. The vacant lot was valued between $360,000 and $390,000.

6

was to "serve as a liquidating vehicle for" Old H-T. The articles' identification of this as the LLC's first purpose supports the superior court's finding, where the other listed purposes are generic in nature. These purely generic purposes include the next listed purpose, "[t]o have and to exercise any and all of the powers specifically granted in the limited liability company laws of the State of Alabama," and the next thereafter, "[t]o build, manufacture, or otherwise process or produce," and "to acquire, own, manage, operate, improve or deal with," among other powers, "property of every kind and wheresoever situated." The articles, together with the evidence noted below, support the superior court's reasonable inference that the genuine "sole purpose" of the LLC was to liquidate Old H-T.

New H-T challenges finding of fact 13 that "on a more probable tha[n] not basis, [Old H-T's] liquidation occurred." This finding was also supported by the provision in the articles that the LLC was to "serve as a liquidating vehicle" for Old H-T, and the mostly liquid nature of the $3.7 million in retained assets under the APA. Old H-T retained cash, liquid assets such as cash equivalents and accounts receivable, and vacant real property. Substantial evidence supported the superior court's reasonable inference that the LLC fulfilled its stated purpose and liquidated Old H-T.

In challenged finding of fact 14, the superior court found that there was no evidence that Old H-T conducted any business following the APA. This finding was supported by evidence that Old H-T sold all of its manufacturing assets, transferred its contracts and work orders, Old H-T agreed to a noncompete clause

prohibiting it from competing with New H-T, and New H-T hired 75 percent of Old H-T's employees.

The findings were unsupported in one respect. In challenged finding of fact 12, the superior court found that New H-T's principal, Charles Debardeleben, "understood that the purpose" of the LLC merger was to "wind down" Old H-T. To support this finding, the superior court relied on Debardeleben's deposition testimony, which Debardeleben contradicted at trial. Because Debardeleben's deposition was not admitted into evidence at trial, finding of fact 12 is not supported by substantial evidence. See Dioxin/Organochlorine Ctr. v. Dep't of Ecology, 119 Wn.2d 761, 771, 837 P.2d 1007 (1992) ("Because this court is a reviewing court, it only considers on appeal evidence which was admitted in the trial court."). The consequence of this is that we consider whether the superior court's conclusions are justified by those remaining findings of fact, which were either unchallenged or supported by substantial evidence. See Andren v. Dake, 14 Wn. App. 2d 296, 319, 472 P.3d 1013 (2020). We conclude that they were.

When the predecessor retains assets only for the purpose of liquidation, and they are disbursed, a court may conclude a mere corporate shell was left as to product liability claimants. See George, 107 Wn.2d at 589-90 (predecessor that "adopted a plan of liquidation" and sold "substantially all of its working assets" satisfied first element of product line doctrine); Leren, 9 Wn. App. 2d at 66-67 (100 percent stock purchase of predecessor followed by vote to dissolve five weeks later rendered it a mere corporate shell under the product line doctrine). At the same time, "[a] key premise of the product line exception is that successor liability

8

is only appropriate when the successor corporation by its acquisition actually played some role in curtailing or destroying the claimants' remedies." Hall, 103 Wn.2d at 265-66. In Hall, the plaintiff sought to impose successor liability even though the predecessor corporation had continued in business for years after the asset transfer. Id. at 261. Though it was in bankruptcy by the time of the plaintiff's suit, that inability to respond in damages was not the result of the asset transfer years earlier, and the "mere shell" element was not met. Id. at 267-68. As this court later stated, fairness requires that there be a " 'causal connection between the successor's acquisition and the unavailability of the predecessor.' " Leren, 9 Wn. App. 2d at 63 (quoting Hall, 103 Wn.2d 264-65).

This record lacks direct evidence of the additional fact present in George and Leren, that the liquidation of the predecessor corporation occurred contemporaneously with the asset transfer to the successor. However, we conclude that this does not undermine the superior court's fundamental conclusion, in finding of fact 15 and conclusions of law 22, 24, and 25,[3] that the asset transfer left Old H-T a mere corporate shell. Under the supported findings, Old H-T sold all of its manufacturing assets to New H-T, merged into the LLC for the purpose of liquidating, retained only assets easily liquidated, conducted no further business, and in fact liquidated. These findings support the superior court's conclusion that New H-T acquired substantially all of Old H-T assets, leaving it a

---

[3] See Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) ("A conclusion of law erroneously described as a finding of fact is reviewed as a conclusion of law.").

mere corporate shell.[4]   Existence of evidence to the contrary and alternate permissible inferences do not change our deference to the trier of fact.   See Columbia State Bank, 199 Wn. App. at 319 ("We do not review credibility determinations on appeal.").

B

The second element required to apply the product line doctrine is that the successor held itself out as a continuation of the predecessor "by producing the same product line under a similar name."  Abbott Labs., 102 Wn.2d at 614.  "The product line exception requires the corporation to manufacture the same type of product, and not merely stay in the same type of manufacturing business." George, 107 Wn.2d at 590.   New H-T argues that the superior court erred in denying it, and granting the Littles, summary judgment on the same product line element of the product line doctrine because there is no evidence that it ever sold products containing asbestos.[5]  We agree.

We review motions for summary judgment and their related evidentiary rulings de novo.  Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc., 196 Wn.2d 506,

---

[4] In re New York City Asbestos Litig. held that Old H-T was not rendered a mere corporate shell as a result of the APA for purposes of New York's de facto merger doctrine.  15 A.D.3d 254, 259, 789 N.Y.S.2d 484 (N.Y. App. Div. 2005). The de facto merger doctrine concerns situations in which there has been a consolidation or merger of seller and purchaser.  Id. at 255-56.  It does not address whether a liquidation in substance of the predecessor corporation may leave it a mere corporate shell for purposes of the product line doctrine.

[5] New H-T adequately raised this argument in its motion for summary judgment, writing that the Littles could not prove New H-T had "continued to manufacture [the] same product line under a similar product name" because there were "no records of any proof of sales, completion, manufacturing, payments, or delivery of forced draft blowers, main feed pumps, or *asbestos containing products*."  (Emphasis added.)

514, 475 P.3d 164 (2020). "Summary judgment is proper when the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences are considered in a light most favorable to the nonmoving party." Munich v. Skagit Emergency Commc'n Ctr., 175 Wn.2d 871, 877, 288 P.3d 328 (2012) (citations omitted). In analyzing New H-T's entitlement to summary judgment, we take the facts and reasonable inferences in the light most favorable to the Littles.

At summary judgment, in support of the same product line element, the Littles produced evidence of purchase orders, bills of lading, production orders, and sales letters, all postdating the APA. The purchase orders are for four "turbine driven horizontal" main feed pumps and likely, parts for main feed pumps. The bills of lading are for "fabricated steel ship parts." And the production orders are for the client, United Defense LP, but the evidence is unclear as to the product. The sales letters were both written in 1999 by a New H-T sales manager to senior purchasing agents at United Defense. In one letter, the sales manager refers to an ongoing contract "for the supply of major components required for the VLS MK-41 Missile Launcher and Mark 45, MOD 4 Naval Gun." In the other letter, the sales manager wrote,

> Our services to the Department of Defense date back to over 50 years of quality and on time delivery of major equipment, some of which has been designed by Hardie-Tynes for steam turbine driven Forced Draft Blowers and boiler Main Feed Pump systems on board naval ships. We remain today, a direct supplier to the U.S. Navy for equipment in support of the Steam Turbine Machinery presently in use.

11

Thus, there is specific evidence that New H-T continued to sell main feed pumps, and evidence suggesting continued sales in support of Old H-T's earlier products. But as the Littles concede,[6] the record does not contain evidence that New H-T's sales after the 1997 APA included asbestos containing products.

This prompts the question: if a successor continues to sell the same product that the predecessor sold—for example, here, main feed pumps—but lacking the injurious characteristic that made the former products not reasonably safe, see RCW 7.72.030(1), does the successor have successor liability for the former, injurious products? The parties have not cited a case answering this question. George suggests that in such cases, the product line doctrine does not apply. 107 Wn.2d at 588-89. In George, the original manufacturer produced "DES," the injury causing pharmaceutical at issue, before it was acquired by another company that continued DES production for less than one year, before that company was later acquired by a second successor that never produced DES. 107 Wn.2d at 589.

_____

[6] During closing arguments, the trial judge asked if there was any evidence that products produced by New H-T in the late '90s or in 2000 contained asbestos, and Little's counsel replied, "Whether or not they contained asbestos at that time, I'm not sure." During oral argument before this court, the court commented, "I didn't see–I don't think there's any evidence here that whatever was supplied in the late '90s contained asbestos," and Little's counsel replied, "Yes, I think that's true. And we concede that." Little v. Hardie-Tynes Co., No. 86318-5-I (June 11, 2025), at 14 min., 04 sec. to 14 min., 15 sec., https://www.tvw.org/watch/?clientID=9375922947&eventID=2025061163&startStreamAt=840&stopStreamAt=855. And later, the court asked directly, "Is there any evidence that any of the steam turbine machinery presently in use in 1999 was asbestos containing?" and Little's counsel replied, "I don't think there's any evidence one way or the other in the record." Id. at 18 min., 04 sec. to 18 min, 17 sec., https://www.tvw.org/watch/?clientID=9375922947&eventID=2025061163&startStreamAt=1070&stopStreamAt=1097.

The court held that the first successor, which continued to produce DES for a time, would be liable to the plaintiff under the product line doctrine, but that imposing liability on the second successor would be "too broad an extension" of the rule. Id. The court distinguished between "manufacturing the same type of product and remaining in the same sort of manufacturing business." Id. at 590. "A purchaser of DES may be asked to pay a small additional price to cover the past and present injuries caused by that particular drug, but it is neither logical nor fair to ask consumers of wholly unrelated pharmaceuticals also to pay a premium for injuries caused by DES." Id.

Other cases likewise suggest that successor liability does not exist under the product line doctrine when the successor does not continue the predecessor's injurious product. Fox v. Sunmaster Products, Inc., 63 Wn. App. 561, 571, 821 P.2d 502 (1991) held that a successor's new ladder design was not same product line as its predecessor's discontinued, allegedly defective ladder design. Lundell v. Sidney Machine Tool Co., 190 Cal. App. 3d 1546, 1550, 1553, 236 Cal. Rptr. 70 (1987), held that a successor manufacturer of replacement parts was not liable for its predecessor's defective ladders.[7] Following this reasoning, New H-T would not

---

[7] Case law from other jurisdictions has held that whether the products manufactured by a successor corporation are the same product line is a question of fact, and that it is for the trier of fact to determine whether a product line is sufficiently the same where there is evidence of both material similarity and design alterations. See Schmidt v. Boardman Co., 2008 PA Super 203, ¶¶ 27-30, 958 A.2d 498 (Pa. Super. Ct. 2008) (judgment notwithstanding the verdict denied on same product line element to defendant successor corporation that produced "fire wagons" with alterations as compared to the injury causing fire truck), aff'd on other grounds, 608 Pa. 327, 11 A.3d 924 (2011); Bussell v. DeWalt Prods. Corp., 259 N.J. Super. 499, 518-19, 614 A.2d 622 (1992) ("changes . . . made as a result of technology . . . [were] not dispositive" on the same product line element where

have successor liability under the product line doctrine because, so far as the record shows, it never continued manufacturing and selling Old H-T's injurious products.

The Littles emphasize that the successor's product does "not need to be identical," and instead need only be "the same type of product." Leren, 9 Wn. App. 2d at 68 (citing George, 107 Wn.2d at 588). Leren did not relax the requirement that the product be "the same product line under a similar name." Leren, 9 Wn. App. 2d at 62 (citing Hall, 103 Wn.2d at 262-63). The main question in Leren was whether the product line doctrine applied in a case of distributor liability. 9 Wn. App. 2d at 58-59. The predecessor and successor products were the same: raw white asbestos. Id. at 68. The two products—which were the same product— were dangerous in the same way, distinguished only by their branding. Id. at 61, 68. Relevant to the same product element, Leren held that the successor distributor was liable because it held itself out as akin to the predecessor "by continuing to distribute similar unreasonably dangerous products." Id. at 64. To

---

successor corporation produced radial arm saws with same "distinguishing feature" as the earlier manufactured one which injured the plaintiff). But when the successor corporation manufactures a product bereft of the qualities that originally made it hazardous, courts have held the same product line element cannot be satisfied. See Farmex Inc. v. Wainwright, 269 Ga. 548, 550, 501 S.E.2d 802 (1998) (manufacturer produced allegedly defective hitch pins, but successor corporation produced hitch pins of a different design and was therefore not liable for defects in the manufacturer's design); Kramer v. Weedhopper of Utah, Inc., 204 Ill. App. 3d 469, 472-74, 477, 562 N.E.2d 271 (1990) (In 1960s, manufacturer produced airplane bolt which was "unreasonably dangerous" and "defective," but the manufacturer later improved the bolt design. In the 1980s, when the successor corporation acquired the manufacturer's equipment, the defective bolt was already out of production, "therefore [the successor corporation] could not continue [the] 'product line' ").

the extent <u>Leren</u> allowed liability where the continued product was not identical but only similar, <u>Leren</u> expressly required the continued product to be similar in respect to the unreasonably dangerous characteristic of the product. Thus, <u>George</u>, <u>Fox</u>, <u>Lundell</u>, and <u>Leren</u> all suggest that a successor needs to continue the injurious product to be subjected to the product line doctrine. In contrast, the Littles cite no jurisdiction holding a successor liable even though it never manufactured or sold the unreasonably dangerous product.

Washington adopted the product line doctrine because "the policies underlying strict liability in tort necessitated the formation of an additional exception or rule to address the particular circumstances of a products liability claimant." <u>Hall</u>, 103 Wn.2d at 262. In strict products liability, "[w]e justify imposing liability on the defendant who, by manufacturing, selling, or marketing a product, is in the best position to know of the dangerous aspects of the product." <u>Simonetta v. Viad Corp.</u>, 165 Wn.2d 341, 355, 197 P.3d 127 (2008). Part of the justification for the product line doctrine was that "the successor, by its acquisition, had virtually the same capacity as its predecessor—the manufacturer of the defective product—to estimate the risks of product defects and to spread the costs of insuring against those risks to the product's consumers." <u>Hall</u>, 103 Wn.2d at 265 (citing <u>Ray v. Alad Corp.</u>, 19 Cal.3d 22, 31-34, 136 Cal. Rptr. 574, 560 P.2d 3 (1977)). This part of the justification appears to be missing if the successor does not continue the product line with the defect for which the law imposes liability. Between Washington case law indicating that a successor who does not continue the injurious product is not liable, the absence of any jurisdiction extending the product

line doctrine to such a successor, and the inapplicability at least in part of the justification the Washington Supreme Court has explained for the product line doctrine, we conclude that the doctrine does not apply in these circumstances.[8]

In the absence of evidence that New H-T continued selling products containing asbestos, there is no evidence it continued the same product line. We reverse the denial of New H-T's motion for summary judgment and the judgment in favor of the Littles, and remand for entry of judgment in favor of New H-T.

Birk, J.

WE CONCUR:

Chung, J.                    Mann, J.

---

[8] The product line exception for successor liability is not applicable here because of the lack of evidence that New H-T continued to produce products containing asbestos, and thus the same product. But this does not mean that product sellers could not face successor liability even if they discontinue a hazardous product if they improperly seek to "retain some ownership interest in their assets after cleansing those assets of liability." United States v. Gen. Battery Corp., Inc., 423 F.3d 294, 306-07 (3d Cir. 2005). A seller of asbestos containing products (or another hazardous product) "should not be allowed to avoid liability by transferring its profitable assets leaving no more than a corporate shell unable to satisfy its asbestos-related obligations." Schmoll v. ACANDS, Inc., 703 F. Supp. 868, 874 (D. Or. 1988), aff'd, 977 F.2d 499 (9th Cir. 1992). See Martin, 102 Wn.2d at 609 (listing other recognized exceptions allowing successor liability). But there is no assertion before this court that the asset transfer to New H-T was an improper attempt to evade Old H-T's liabilities.